## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| DELORIS J. on behalf of DEVONTE J., deceased, Plaintiff,[1] | ) ) ) ) |
| v. | ) CAUSE NO.: 1:19-CV-30-WCL-JPK ) |
| ANDREW SAUL, Commissioner of Social Security Administration, Defendant. | ) ) ) |

### FINDINGS, REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE PURSUANT TO 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on a Complaint [DE 1], filed on January 31, 2019, and on Plaintiff's Opening Brief [DE 13], filed on June 4, 2019. Defendant filed a response [DE 14] on June 24, 2019. Plaintiff filed a reply [DE 15] on July 23, 2019.

On April 29, 2019, District Court Judge William C. Lee entered an Order [DE 8] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

### PROCEDURAL BACKGROUND

On February 5, 2015, the claimant, Devonte J., filed applications for child's insurance benefits based on disability and for supplemental security income. The application was denied initially and on reconsideration. The claimant requested a hearing. On October 26, 2016, the

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Report.

claimant died. A hearing was held before an Administrative Law Judge (ALJ) on March 22, 2017, at which the claimant's mother, Plaintiff Deloris J., appeared as a substitute party and testified. Also in attendance at the hearing were Plaintiff's attorney and an impartial vocational expert. On July 14, 2017, the ALJ issued an unfavorable decision, making the following findings:[2]

    1.    Born [in 1994], the claimant had not attained age 22 as of August 30, 2014, the alleged onset date.

    2.    The claimant had not engaged in substantial gainful activity since August 30, 2014, the alleged onset date.

    3.    The claimant had the following severe impairments: status post thoracolumbar fusion due to progressive scoliosis, right ulnar repair, left hearing loss, history of fetal alcohol syndrome, borderline intellectual functioning, conduct disorder, impulse control disorder, attention deficit hyperactivity disorder, receptive and expressive language delays, oppositional defiant disorder and antisocial personality disorder.

    4.    Prior to his death, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    5.    After careful consideration of the entire record, the undersigned finds that, prior to his death, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could occasionally climb ramps, stairs, ladders, ropes, scaffolds and he could frequently balance. He could occasionally stoop, kneel, crouch and crawl. He could understand, remember and carry out simple one to two step instructions and tasks communicated face to face. He could make judgments on simple decisions. He could respond appropriately to occasional and superficial interactions with coworkers and supervisors, but he should have avoided tandem tasks, work performed in concert with others, or work activity that relies on others to complete the tasks. He should have avoided all work activity involving the general public. He could respond appropriately to usual work situations and he could deal with routine changes in a routine work setting.

    6.    The claimant had no past relevant work.

    7.    The claimant was born [in 1994] and was 19 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

---

[2] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

8.  The claimant had at least a high school education and was able to communicate in English.

9.  Transferability of job skills is not an issue because the claimant did not have past relevant work.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed prior to his death.

11.  The claimant was not under a disability, as defined in the Social Security Act, from August 30, 2014, at any time before he died.

(AR 22-32).[3]

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g).

Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir.

---

[3] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits under the Social Security Act, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any impairment listed in the regulations as presumptively disabling, (4) if the claimant does not meet a listing, whether the claimant is unable to perform the claimant's past relevant work, and (5) if the claimant is unable to perform past relevant work,

whether the claimant is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff seeks judicial review of the ALJ's decision, arguing that the ALJ erred in evaluating Plaintiff's hearing testimony, that the ALJ failed to properly weigh the medical opinion evidence, that the ALJ failed to incorporate all of the claimant's mental limitations in determining the claimant's RFC and in posing questions to the vocational expert, and that the ALJ's decision is invalid because she was not constitutionally appointed. The opening brief of the Plaintiff seeks not only remand, but an award of benefits. For the reasons set forth below, the Court finds that remand is appropriate. The Plaintiff has pointed to errors in the ALJ's ruling. And while the Court agrees there was error, the ALJs' thoughtful and sound consideration of many other issues is apparent in the record. The Plaintiff does not show that an award of benefits is a forgone conclusion under the applicable legal standards and burden of proof.

### A. Plaintiff's Hearing Testimony

A claimant's RFC must be "based on all of the relevant medical and other evidence," and the ALJ will "consider descriptions and observations of [the claimant's] limitations from [his or

her] impairment(s) . . . provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons." 20 C.F.R. 404.1545(a)(3); *accord Ellwanger v. Astrue*, 642 F. Supp. 2d 891, 901 (W.D. Wis. 2009) ("[I]n formulating a claimant's residual functional capacity, an administrative law judge must consider all relevant evidence, both medical and non-medical.").

The parties couch their arguments regarding the hearing testimony of Plaintiff as one of subjective symptom testimony. Testimony regarding subjective symptoms is often given by a claimant. Here, though, Plaintiff is not the claimant, so her statements are a non-medical opinion and, as such, the ALJ's consideration of this opinion is governed by certain regulations and rulings.

> Opinions . . . from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors [used for evaluating medical opinions], not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion . . . from a nonmedical source depends on the particular facts in each case.

20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). Further,

> [t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at §§ 404.1527(f)(2), 416.927(f)(2).

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Plaintiff identifies a concerning aspect of the ALJ's decision. After recounting Plaintiff's testimony at the March 22, 2017 hearing, the ALJ stated as follows:

6

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, *the claimant's statements* concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 26 (emphasis added)). As Plaintiff correctly notes, the claimant died prior to the hearing and provided no hearing testimony. The Commissioner notes that "[t]he ALJ clearly stated that Ms. [J.] was the substituted party, and [the ALJ] discussed Ms. [J.'s] testimony about her son." (Def.'s Mem. 9, ECF No. 14 (citing AR 20, 26)). However, in the ALJ's findings of fact and conclusions of law, the ALJ uses "the claimant" to refer to Devonte J. and "Ms. [J.]" or "the claimant's mother" to refer to Plaintiff Deloris J. *See, e.g.*, (AR 22 ("The claimant had not engaged in substantial gainful activity."); AR 24 ("As for adapting or managing oneself, the claimant experienced moderate limitations."); AR 26 ("Ms. [J.] testified that the claimant could not live on his own"); AR 27 ("the claimant's mother reported his absence from treatment")).

Additionally, as stated above, Plaintiff's hearing testimony is a nonmedical opinion. It is not the claimant's statements of his subjective symptoms. The ALJ's entire analysis of Plaintiff's testimony is the paragraph quoted above and one later finding: "[a]lthough Ms. [J.] testified that the claimant stayed angry and was very violent from time to time, the evidence shows the claimant demonstrated the ability to interact with others in a superficial manner without the demands of tandem tasks." (AR 27). Even if the Court were to conclude that the paragraph about "the claimant's statements" should be construed as addressing Plaintiff's hearing testimony and not any statements made by the claimant, this paragraph explained only that the testimony "is not entirely consistent" with the evidence. The Seventh Circuit Court of Appeals has deemed this "meaningless boilerplate" that "yields no clue to what weight the trier of fact gave the testimony." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (quoting *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir.

7

2010)).[4] Only Plaintiff's testimony that the claimant stayed angry and was very violent from time to time received any analysis beyond this boilerplate language.

This leaves a significant gap in the ALJ's analysis. Plaintiff testified that the claimant "wouldn't take baths or do anything. I would have to be there to watch him and stand over him to get his bath"; "I had to stand there and give him instructions"; "I even had [case managers] come out to give me a hand with him to teach him how to do things to try to be independent. And they said, Ms. [J.], he would need someone to be with him because he can't follow orders on his own"; "And like I would give him a task of doing things at home, and it was like he wouldn't get it done unless I stand there and tell him that you need to finish or you need to do this next. His mind wouldn't let him." (AR 51); *see also* (AR 26 (ALJ's report of Plaintiff's testimony)). The ALJ nowhere weighed Plaintiff's opinion regarding the claimant's need for supervision, which, the Court notes, is consistent with the medical opinion of Dr. Bader that the claimant would always require supervision in a work environment and is supported by the consulting experts' opinions that the claimant may benefit from extra supervision when learning new tasks and completing tasks, which will be addressed later in this opinion. *See* SSR 06-03p, 2006 WL 2329939, at *6 (noting that consistency with other evidence is appropriate to consider when weighing nonmedical opinions).

The ALJ provided inadequate analysis of Plaintiff's testimony. First, the ALJ confusingly commented on the consistency of the *claimant's* statements after recounting *Plaintiff's* testimony, and the ALJ used what the Seventh Circuit Court of Appeals called "meaningless boilerplate" in

---

[4] The cited cases involved substantially the same boilerplate language, though those cases use "not entirely credible" instead of "not entirely consistent." Changes to the Social Security regulations in 2016 clarified that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). What was prior to SSR 16-3p called "credibility" has since been called "subjective symptom evaluation." The Court sees no reason why "not entirely consistent" is any less "meaningless boilerplate" than "not entirely credible," as the flaw in both is the same: no clarification is provided as to the weight given to the testimony or opinion.

8

doing so. Second, only Plaintiff's testimony regarding claimant's anger and occasional violence was addressed (and implicitly weighed) elsewhere in the opinion. Plaintiff's relevant testimony regarding the claimant's need for supervision was not weighed, creating a gap in the logical bridge from the evidence of record to the ALJ's conclusions on this issue. Because of this gap, the undersigned recommends that this matter be remanded for further proceedings.

### B. Medical Opinion Evidence

For claims filed prior to March 27, 2017, the "treating physician rule" mandates that if "a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," then it will be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *accord Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018).

If a treating physician's opinion is not given controlling weight, then it is weighed according to the same factors that are used to weigh every other medical opinion, namely, the examining relationship, the treatment relationship (including the length, frequency, nature, and extent of this relationship), supportability, consistency, specialization, and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ gave "some weight" to the medical opinion of treating physician Dr. Patricia Bader. (AR 30). Plaintiff argues that this opinion should have been given controlling weight under the treating physician rule and, in the alternative, that the ALJ did not properly weigh the opinion under the factors listed above because the ALJ did not explain how or if she considered these factors.

Dr. Bader's letter, co-signed by nurse practitioner Deborah Baker, is as follows:

> To whom it may concern,
>
> We are writing this letter on behalf of DeVonte [J.], [born in 1994]. He has been seen in our office since 2008. He was brought to see us by his adoptive mother, who is his biological aunt. DeVonte was exposed prenatally to street drugs, alcohol, and tobacco. His biological mother is mildly mentally handicapped.
>
> DeVonte did have a complete neuropsychological workup in January of 2011. He was found to have borderline intelligence. He requires cueing, reminders to manage his activities of daily living. He cannot manage his own finances. He cannot manage or maintain a home. He is easily influenced by others and has been in trouble with the law due to his lack of understanding, impulsivity, and poor reasoning skills.
>
> DeVonte is hearing impaired in his left ear. He has been severely burned as a small child, and he has been sexually abused as a small child.
>
> All of these challenges make it very difficult for him to have any type of gainful employment. He will always require supervision both at home and in any kind of work environment. We strongly urge that DeVonte be considered permanently disabled.

(AR 695; *see also* AR 541 (an effectively identical letter sent ten months earlier)). In assigning some weight to the opinion, the ALJ "agree[d] that the claimant should have avoided more complex and detailed work tasks, work requiring greater independence and judgment, as well as work activity requiring unlimited and near constant interactions with others." (AR 30).

The ultimate question of disability is for the Commissioner, so the last sentence of Dr. Bader's opinion quoted above is not treated as a medical opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). However, opinions about the nature and severity of the claimant's impairments are medical opinions, and, as Dr. Bader was a treating medical source, her medical opinion must be evaluated as set forth in the regulations.

Plaintiff argues that the ALJ should have assigned controlling weight to the medical opinion that the claimant would always require supervision in a work environment. The ALJ stated that:

10

> [Dr. Bader's] opinion that the claimant would always require supervision at home and in any kind of work environment is not supported by the evidence, which showed greater stability with treatment. In fact, the actual treatment notes, particularly from Park Center, do not document the degree of limitation suggested, particularly the suggestions regarding the degree of supervision required.

(AR 31).

The ALJ seems to apply the wrong standard, or at the least failed to explain how she applied the correct standard. The treating physician rule requires, in part, that the treating physician opinion be "not inconsistent" with substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ describes the opinion as "not supported by the evidence," and proceeds to identify claimant's treatment notes from Park Center as the unsupportive notes.[5]

The ALJ's description of the claimant as having "greater stability with treatment" is not enlightening as to the degree or severity of the effects of his impairments. Stability is a measurement of change, not an indication of ability. *See Carter v. Colvin*, No. 2:14-cv-416, 2016 WL 491640, at *4 (N.D. Ind. Feb. 8, 2016) ("Instead of meaning that symptoms have subsided, 'stable' indicates that the condition is '[s]teady; not varying; resistant to change.'" (quoting *Stedman's Medical Dictionary* 1817 (28th ed. 2006)) (citing *Neher v. Colvin*, No. 14-C-5430, 2016 WL 278877, at *2 (N.D. Ill. Jan. 22, 2016); *Lakes v. Astrue*, No. 11-C-3592, 2013 WL 623022, at *12 (N.D. Ill. Feb. 19, 2013)); *see also Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008) ("the fact that other physicians who examined or treated plaintiff for other conditions used the word 'stable' to describe her fibromyalgia says nothing about whether plaintiff can work: a person can have a condition that is both 'stable' and disabling at the same time."). Even if the Court were to infer that the ALJ meant "improved" by stating that the claimant had "greater stability with treatment," improvement can occur without enabling claimant to perform full-time

---

[5] The ALJ did not make any findings regarding the other requirement of the treating physician rule: that the opinion be well-supported by medically acceptable clinical and laboratory diagnostic techniques.

11

competitive work. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (characterization as "stable or "improving" does not necessarily mean claimant is capable of full-time work); *cf. Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016) ("The administrative law judge belittled the plaintiff's hypersomnia on the ground that the plaintiff had acknowledged that a [CPAP] machine, connected to a face mask or nasal pillow to treat sleep apnea, had given him some relief from that condition. But no evidence was presented that the relief was complete, or even substantial; the only evidence was that 'his mornings are now more lucid.'").

The ALJ did provide more clarification with her further statement that the treatment notes from Park Center do not document the need for constant supervision. Still, the fact that the treatment notes "do not document" the same need noted by Dr. Bader is not a finding that the Park Center notes are inconsistent. An inconsistency would be if the notes, instead of not documenting the need, documented *a lack of the need*. The absence of a statement on a topic is not inconsistent with a finding on the topic, it is merely a lack of support. The ALJ did not cite any particular part of the Park Center treatment notes in support of her finding, and the ALJ's discussion of the Park Center records earlier in the decision do not mention a need for supervision or the lack thereof. Thus, the conclusion to be drawn from the ALJ's comment is that the Park Center treatment notes, while not corroborating Dr. Bader's opinion, have not been articulated as inconsistent with the opinion. The ALJ has failed to articulate a reason to not afford Dr. Bader's opinion controlling weight under the treating physician rule, which is another basis on which the undersigned recommends remand for further proceedings.

### C. Claimant's Mental Limitations

Plaintiff argues that the ALJ failed to account for the state agency psychological consultants' opinions that the claimant was moderately limited in sustaining an ordinary routine

12

without special supervision and in accepting instructions and responding appropriately to criticism from supervisors. These opinions begin at pages 143 and 170 of the administrative record, labelled exhibits B2A and B6A, respectively, and were given great weight by the ALJ. (AR 31).

On the following page of each opinion, the consultants provided a paragraph of narrative explanation of the claimant's mental RFC. (AR 144, 171). This additional explanation provides, in part, that claimant "may benefit from extra supervision when learning new tasks and completing tasks"; "[t]he claimant could work with a supervisor who was normally considerate and positive, but would have problems with a supervisor who was often negative, critical, or quarrelsome"; and

> [t]he totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of unskilled work; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with changes in a routine work setting.

(AR 144, 155, 171, 186).

The ALJ did not include in the claimant's RFC a limitation regarding extra supervision when learning new tasks and completing tasks or otherwise address the moderate limitation in sustaining an ordinary routine without special supervision noted by both agency reviewers. The ALJ did include a limitation for simple instructions, making simple decisions, and allowing routine changes. The ALJ also included a limitation of "occasional and superficial interactions with coworkers and supervisors." (AR 25).

An ALJ does not err in failing to include medical opinions of moderate limitations when the medical professional "translate[s] those finding into a specific RFC assessment." *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002); *see also Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) (finding error in not including opinions of moderate limitations because the translation of the limitations into the RFC assessment did not capture the claimant's difficulties). Here, however, even if the consultants' RFC assessments did properly translate the moderate limitation

13

in sustaining an ordinary routine without special supervision, the ALJ did not include the translation regarding extra supervision when learning new tasks and completing tasks in the claimant's RFC.[6]

The ALJ assigned great weight to the consultants' opinions but then failed to include portions of the opinions in the claimant's RFC. Notably, the omitted portions touch on the issue of supervision, which is the same underlying limitation at issue in the analysis above regarding Plaintiff's testimony and Dr. Bader's medical opinion. The undersigned recommends remand on this issue. The ALJ has not reconciled her assignment of great weight to the consultants' opinions with her failure to adopt the consultants' opinions regarding supervision.

### D. Constitutional Appointment

Finally, Plaintiff argues that remand is required because the ALJ was not constitutionally appointed at the time she rendered her decision. This argument is based on a developing body of caselaw following the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). As Plaintiff identifies, any Appointments Clause defect was cured on July 16, 2018, when the then-Acting Commissioner ratified the appointment of all previously hired ALJs. Thus, if this case is remanded for further proceedings, any ALJ handling this case in the future will not be subject to the same Appointments Clause argument raised here. Given the errors noted above, the already stated reasons why the undersigned is recommending that this matter be remanded, the unsettled nature of the law in this area, and the interest in judicial economy, further analysis of this argument is not warranted.

---

[6] The ALJ also altered the opinion from *brief* supervision and interactions to *occasional and superficial* interactions with coworkers and supervisors. The former is a restriction on the length of the encounters, while the latter is a restriction on frequency and content. However, Plaintiff makes no argument on this particular issue, so the undersigned makes no recommendation on it.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court reverse the decision of the Commissioner of the Social Security Administration and remanding for further proceedings as discussed above.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 19th day of December, 2019.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT